

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

JEFFREY B. COHEN
58021-037
PO Box 5000
Bruceton, Mills, WV 26525,

    Plaintiff,

v.

DANIEL FREED
400 West Erie
Suite 500
Chicago, IL 60654,

    Defendant,

and

KURTIS PRODUCTIONS, LTD.
400 West Erie
Suite 500
Chicago, IL 60654,

    Defendant,

and

COMCAST CABLE COMMUNICATIONS, LLC
1701 John F. Kennedy Blvd.
Philadelphia, PA 19103,

    Defendant,

and

HUGH HURWITZ
in his capacity as
ACTING DIRECTOR
FEDERAL BUREAU OF PRISONS
U.S. Department of Justice
320 First St., NW
Washington, DC 20534,

    Defendant.

1:18-cv-5766
Judge: Thomas M. Durkin
Magistrate Judge: Sheila M. Finnegan

RECEIVED
AUG 21 2018
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

1

## COMPLAINT FOR EQUITABLE RELIEF

Plaintiff Jeffrey Cohen, pro se ("Cohen") brings this Complaint against Defendants Daniel Freed; Kurtis Productions, Ltd.; Comcast Cable Comm., LLC; and Hugh Hurwitz, in his capacity as Acting Director of the Federal Bureau of Prisons (FBOP), alleging as follows:

### I. NATURE OF THE ACTION

1. This action is brought, in part, under the Administrative Procedures Act, 5 U.S.C. §§ 701 et seq.; the Declaratory Judgment Act, 28 U.S.C. § 2201; and the United States Constitution—Fifth Amendment; and seeks injunctive relief for violations of Cohen's Constitutional guarantee of effective and meaningful court access and for violations of his Constitutionally guaranteed liberty rights.

### II. PARTIES

2. Cohen is an individual who is currently restrained of his liberty at a federal correctional institution in Bruceton Mills, WV.

3. Freed is an individual who is a television producer working for Defendant Kurtis. Freed produces the television show "American Greed". Upon information and belief, Freed is a citizen of the State of Illinois and maintains a place of business in Chicago, IL.

4. Kurtis is a media production entity that owns the rights to produce the television show "American Greed". Upon information and belief, Kurtis is an Illinois domiciled business entity and maintains a place of business in Chicago, IL.

5. Comcast is one of the largest media entities in the World. It owns the NBC network of media companies that includes CNBC. CNBC broadcasts the television show "American Greed". Comcast is a Delaware domiciled business entity with a place of business in Philadelphia, PA.

6. Hurwitz is an individual who upon information and belief is a citizen of the District of Columbia. He is the Acting Director of the FBOP. The FBOP is an agency of the Department of Justice. He maintains a place of business in Washington, DC.

### III. JURISDICTION AND VENUE

7. This action seeks relief under the APA, 5 U.S.C. §§ 701 et seq., and the Declaratory Judgment Act, 28 U.S.C. § 2201, and the United States Constitution. Because this action arises under the laws of the United States, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) because this is an action against an agency and officer of the United States, and a substantial part of the events giving rise to the claims alleged herein occurred in this district.

### IV. LEGAL BACKGROUND

9. FBOP/DOJ, as an agency, has promulgated regulations implementing rules that govern the agency. The rules discussed herein—codified into law as federal regulations (CFRs), are separate 'discrete' Agency Actions. Agency Action "includes the whole or part of an agency rule" (5 U.S.C. § 551(13)). Rule "means the whole or part of an agency statement of general or particular applicability and future affect designed to implement...**or prescribe law or policy or describing the...procedure, or practice requirements of an agency.**" 5 U.S.C. § 551(4) (all emphasis herein added).

10. An agency's rules have the force and effect of law, and ar binding when they affect an individual's rights.

11. FBOP has promulgated rules that prohibits the access of state law material to incarcerated individuals. See FBOP Program Statement 1315.07 at 2(d) "The Bureau is not mandated toprovide state case law and other state legal materials."

3

12. Provided no statutory right of action exists, Agency Actions are subject to judicial review under the APA if the actions are "final". A Rule (Agency Action) is final if it represents the final crystalized agency position on the matter; and if it consummates the agency's decision making process. The FBOP, under the direction of Hurwitz, decided to enact its rules that obstructs court access for inmates.

## V. BACKGROUND

13. Cohen is currently incarcerated in a federal facility in West Virginia. For reasons expressly detailed in Appendix A and its attachments, which are incorporated by reference as if fully stated herein, his judgment of conviction and corresponding sentence are infirm and are being challenged pursuant to 28 U.S.C. § 2255.

14. In July 2016, Freed contacted Cohen to advise him that Kurtis was dedicating an episode of American Greed to his case. Freed stated that he was producing "the CNBC true-crime documentary series American Greed focusing on various cases of financially-motivated crime." Comcast—as the owner of the NBC network of media entities—is the broadcaster of CNBC.

15. Cohen provided detailed information to Freed showing that his judgment was infirm. Mainly, the district court based his sentence on constitutionally impermissible factors. At the time, Cohen's direct appeal was pending in the Fourth Circuit.

16. In August 2016, Freed advised Cohen that the episode was not moving forward because of the pending appeal.

17. Cohen's assigned public counsel failed to raise the issue of illegality of his sentence and in April 2018, the appellate court dismissed in part and affirmed in part. <u>United States v. Cohen</u>, 888 F.3d 667 (4th Cir. 2018).

18. The issue of illegality and the constitutional impermissible factors, that forms the basis of the defamation assertions herein, was not addressed by the circuit court.

19. In the two-and-a-half years since Cohen's sentencing, several civil actions have yielded substantive new evidence that further shows Cohen was sentenced on false and inaccurate information, e.g., In re Indemnity Insurance Corporation, RRG In Liquidation, De. Ch., Case No. 8601; Indemnity Insurance Corporation, RRG V. Cohen, De. Ch., Case No. 8985. The false information, and other issues, are the primary basis for Cohen's motion to vacate the criminal judgment pursuant to 28 U.S.C. § 2255.

20. In July 2018, Freed advised Cohen that production was nearly complete for an episode of American Greed based on his case and if Cohen wanted to provide his comments for the episode, he had to promptly call Freed.

### VI. FACTUAL ALLEGATIONS

#### A. American Greed Episode Is A False Portrayal Of Cohen And His Conduct

21. American Greed is a television show, produced by Kurtis and Freed, which is broadcast by CNBC—an owned entity of Comcast. The show, broadcast to the public, is not news. As evidenced in **Exhibit J** the CNBC/American Greed 'About' section of its website describes the show as exploitative:

> Discover multi-million dollar scams...where devious frauds feed deviant desires...American Greed takes you deep inside shocking true stories of brazen con artists who thrive on stealing fortunes, ruining and even taking lives...reporting exposes the devastating effects greed has on victims, bringing you up-close to heartless villains living large on other people's life savings...these crooked masterminds defraud the wealthy, rip off their own families, and scam their friends...with evil like this, no one is safe.

22. The show is commercial speech that is not privileged. As evidenced in its descriptive web page, it purports to report on facts, not opinion.

23. The episode about Cohen will publicize false information and innuendo that is contradicted by factual evidence. By way of example, the episode will report that Cohen caused the insolvency of his insurance company, which led to a massive fraud on policyholders.

24. As shown in Appendix A, Cohen's company was not legally insolvent pursuant to Delaware law. Evidence shows that it was very successful and financially healthy with millions in annual profits and over $83 million in assets. Evidence further shows that his only admitted conduct, related to policyholder fraud, is that he misrepresented his Company's reinsurance structure to three policyholders. See Declaration of Jeffrey Cohen (**Exhibit A** of App'x A) (detailing his actions as admitted to in the stipulated facts of his Plea Agreement).

25. Evidence shows that policyholders were thrilled with Cohen's Company while he operated it. All of the purported harm to policyholders occurred after Cohen's banishment and is directly attributable to the mismanagement of the Company by the court appointed Receiver. See **Exhibit B** of App'x A (testimonials and affidavits of policyholders stating they were very pleased with Cohen and his Company until the takeover by the Receiver).

26. Evidence shows that the Company was flush with cash, but since his banishment, the Receiver has parasitically fed off of the cash reserves without paying claims of policyholders. At the time of his banishment, the Company had $20 million in outstanding policyholder claim liabilities but had over $31 million in cash to meet those obligations. Since his banishment, the Receiver has refused topay any policyholders while paying themselves over $10 million. See App'x A.

27. The false claims of bankruptcy (insolvency) are not supported by fact and will impugn Cohen's job performance, which as evidenced, shows he led the Company to extreme profitability. See **Exhibit C** of App'x A (Financial Statement showing 5 years of profitability).

28. The episode will publicize private information of Cohen, his family, and his businesses that is offensive, misleading, and not of legitimate concern to the public.

29. Cohen's substantial income was not unlawful. Evidence shows that the prosecution produced inaccurate information during his Criminal Matter in an attempt to exaggerate his conduct. See **Exhibit D** of App'x A at ¶ 60.

6

30. Cohen's lifestyle is not a legitimate concern to the public. As recently stated by U.S. District Judge T.S. Ellis, III in the trial of Paul Manafort—a trial that **is** a legitimate concern to the public—the court blocked the showing of information illustrating Manafort's spending habits. The court stated the information would unfairly "besmirch the defendant"; information related to expensive clothing, lavish homes, and luxury cars, "engenders resentment against rich people." Kevin Johnson, USA Today, Aide Says Manafort Accounts Unkown, p. 3A, Friday Aug. 3, 2018.

### B. Cohen's Lack Of Court Access Prevents Him From Protecting His Interests

31. As evidenced in **Exhibit E** of App'x A, Cohen's facility provides an Electronic Law Library ("ELL") where inmates are afforded restricted access to legal materials. The ELL consists of twelve workstations (shared amid 1,500 inmates) that limits access to select federal and District of Columbia law. The ELL provides no access to state law, contains no treatises on state civil procedures, contains no state court rules, nor is there any capability of internet search. The ELL is constantly unavailable to Cohen because of the arbitrary actions of the agents of Defendant Hurwitz.

32. Included in the exhibit referenced in ¶ 31 above, is an email from the Director of Education at Cohen's facility (an agent of Hurwitz) confirming that Cohen cannot access state law materials. Also included is an email to the Warden of the facility (an agent of Hurwitz) in which Cohen identified his need for court access (related to other civil actions). The Warden cited the same regulation. Upon further request, the Warden instructed Cohen to take up the matter with his Unit Manager. Included in the exhibit is an email string with Cohen's Unit Manager showing that his request was denied.

33. Included in the exhibit are the administrative filings where Cohen requests court access. His initial request was denied. He requested a review of the denial, which was received by the Administration on October 17, 2017. The review was not responded to. Cohen requested an appeal of the constructive denial, which was arbitrarily rejected.

## VII. LEGAL CLAIMS

### COUNT I: Violation of Agency Rule
### (Defendant Hurwitz)

34. Paragraphs 1-33 are incorporated by reference as if fully set forth herein.

35. The FBOP constitutes an "Agency" whose regulations are reviewable under the APA.

36. Hurwitz, as the top executive of the FBOP, is responsible for the rules promulgated by his Agency. The rule preventing Cohen from court access is arbitrary, capricious, an abuse of discretion, and not in accordance with law.

37. The denial of court access, resulting from the FBOP rule, constitutes final Agency Action that is subject to judicial review.

38. This Complaint satisfies all procedural requirements for an action under the APA.

39. Other than the relief requested, there is no adequate remedy in a court for the harm caused Cohen by the improper conduct of the Defendant.

40. Cohen has suffered legal wrong and is damaged in his legal rights by Hurwitz's actions and inactions pursuant to the agency statements, laws or policies, and procedure of the FBOP.

41. For the reasons set forth above, Cohen should be awarded injunctive relief should he prevail on the merits: He has suffered irreparable injury, remedies at law are inadequate to compensate for that injury, the balance of hardships warrants injunctive relief, and the public interest would not be disserved by a permanent injunction.

### COUNT II: Obstruction or Denial of Meaningful Court Access
### (Defendant Hurwitz)

42. Paragraphs 1-41 are incorporated by reference as if fully set forth herein.

43. The knowing and intentional conduct of Hurwitz, which prevents access to state law, violates Cohen's rights secured under the United States Constitution, Article IV, § 2, and the First and Fifth Amendments.

44. As an indigent litigant without proper court access, Cohen cannot meaningfully:

- know the proper elements, in the fashion required by state law, to seek relief for his defamation claims;

- know the proper elements, in the fashion required by state law, to seek relief for his conspiracy claims;

- know the proper elements, in the fashion required by state law, to seek relief for the business protection claims of his sole proprietorships;

- know the proper elements, in the fashion required by state law, to seek relief for his claims of disclosure of private facts; and

- know the proper elements, in the fashion required by state law, to protect his liberty rights against an unjustified invasion and wrongful hurt.

45. Hurwitz's conduct has:

a) frustrated Cohen's efforts to pursue non-frivolous legal claims; and

b) hindered Cohen's ability to litigate by forcing him to litigate without equal access and opportunity as those who would oppose him.

46. Other than the relief requested, there is no adequate remedy in a court for the harm caused Cohen by the improper conduct of the Defendant.

47. Cohen has suffered legal wrong and is damaged in his legal rights by Hurwitz's actions and inactions.

48. For the reasons set forth above, Cohen should be awarded injunctive relief should he prevail on the merits: He has suffered irreparable injury, remedies at law are inadequate to compensate for that injury, the balance of hardships warrants injunctive relief, and the public interest would not

disserved by a permanent injunction.

### COUNT III: False Light Invasion of Privacy
### (Defendants Freed, Kurtis, Comcast)

49. Paragraphs 1-48 are incorporated by reference as if fully set forth herein.

50. Defendants had sufficient notice of the factual inconsistencies surrounding Cohen's Criminal Matter.

51. The factual information provided to Defendants shows clear reasons to doubt the truthfulness and accuracy of the information they relied on to produce and commit to publicize the episode.

52. Defendants produced and committed to publicize the episode with a high degree of awareness of probable falsity.

53. The publication of the false information involves misrepresentations of Cohen's character, history, activities, and motivations. All of which are highly offensive to reasonable persons.

54. Other than the relief requested, there is no adequate remedy in a court for the harm caused Cohen by the improper conduct of the Defendants.

55. Cohen has suffered legal wrong and is damaged in his legal rights by Defendants actions and inactions.

56. For the reasons set forth above, Cohen should be awarded injunctive relief should he prevail on the merits: He has suffered irreparable injury, remedies at law are inadequate to compensate for that injury, the balance of hardships warrants injunctive relief, and the public interest would not be disserved by a permanent injunction.

### COUNT IV: Aiding and Abetting
### (Defendants Freed, Kurtis, Comcast)

57. Paragraphs 1-56 are incorporated by reference as if fuly set forth herein.

58. The Defendants acted knowingly to produce an episode that portrays Cohen in a false light based on false information.

59. The Defendants intentionally created a media platform to exploit and sensationalize commercial speech. The media platform assists the publication of the false information that harms Cohen.

60. Other than the relief requested, there is no adequate remedy in a court for the harm caused Cohen by the improper conduct of the Defendants.

61. Cohen has suffered legal wrong and is damaged in his legal rights by Defendants actions and inactions.

62. For the reasons set forth above, Cohen should be awarded injunctive relief should he prevail on the merits: He has suffered irreparable injury, remedies at law are inadequate to compensate for that injury, the balance of hardships warrants injunctive relief, and the public interest would not be disserved by a permanent injunction.

## VIII. RELIEF REQUESTED

WHEREFORE, judgment should be entered in favor of Cohen against Defendants, jointly and severally, and the Court should grant the following relief:

a) an order and judgment declaring the FBOP regulation restricting Cohen's court access is violative of his Constitutional rights;

b) an order and judgment declaring the FBOP regulation restricting Cohen's court access prevents him from meaningfully protecting his interests;

c) an order and judgment enjoining the further obstruction of access to state law materials;

11

d) an order and judgment declaring the conduct of Defendants Freed, Kurtis, and Comcast has placed Cohen in a false light in the public eye;

e) an order and and judgment enjoining the American Greed publication containing false and misleading information about Cohen and his businesses; and

f) any other relief as may be just and proper.[1]

Respectfully submitted on August 17, 2018.

Jeffrey Cohen
Plaintiff, pro se
58021-037
PO Box 5000
Bruceton Mills, WV 26525

---

1   A motion for preliminary injunction is being submitted along with this Complaint. The motion requests injunctive relief in the form of an order preventing the publication of the American Greed episode until such time that Cohen has adequate and meaningful access to the court to present his claims.

## VERIFICATION

The undersigned, being a pro se litigant, affirms the following under the penalty of perjury:

That I am the pro se litigant in the within action. That I have read and know the contents of the foregoing Complaint and attached documents and that the same its true to my own knowledge.

This verification is based upon information personally known to myself. The facts stated within the Complaint are true and correct.

Dated:  Bruceton Mills, WV
        August 17, 2018

_____
Jeffrey Cohen